**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

CHERYL BRIGGS                    :

            Plaintiff,           :

                                           Case No. 3:09CV0119

  vs.                    :

                                           District Judge Thomas M. Rose

MICHAEL J. ASTRUE,               :     Magistrate Judge Sharon L. Ovington
    Commissioner of the Social
    Security Administration,        :

            Defendant.          :

## REPORT AND RECOMMENDATIONS[1]

## I.    INTRODUCTION

Plaintiff Cheryl Briggs sought financial assistance from the Social Security Administration by applying for Supplemental Security Income ["SSI"] on October 7, 2004, alleging disability since January 1, 2000. (Tr. 54-57). She claimed to be disabled by chronic obstructive pulmonary disease, asthma, sacroiliac disease, bipolar disorder, anxiety and diabetes. (Tr. 64).

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

After various administrative proceedings, Administrative Law Judge ["ALJ"] Thomas R. McNichols, II, denied Plaintiff's SSI application based on his conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 24). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #12), the administrative record, and the record as a whole.

Plaintiff seeks an order remanding the ALJ's decision to the Social Security Administration with instructions to reconsider evidence from the treating psychiatrist and mental health clinic. The Commissioner seeks an Order affirming the ALJ's decision.

## II.  BACKGROUND

Plaintiff was 44 years old at the time of the administrative decision, and thus was considered to be a "younger person" for purposes of resolving her SSI claim. *See* 20 C.F.R. § 416.963(c); (*see also* Tr. 54). She has a high school education in the learning disabled program, as well as vocational training as a nurse's aide.

*See* 20 C.F.R. § 416.964(b)(4); (*see also* Tr. 71).  Plaintiff has worked in the past as a nurse's aide.  (Tr. 77).

Plaintiff testified at the May 2008 administrative hearing that she stopped working in August 2000.  (Tr. 582).  Plaintiff described suffering from bipolar disorder that confines her to her house.  (Tr. 588).  She reported crying almost every day (*id.*) and having quickly changing moods.  (Tr. 589).  She also testified to suffering from depression that left her not wanting to leave her house or do anything.  (*Id.*).  Plaintiff testified that she was receiving counseling and that her medications helped "a little bit."  (Tr. 590).  She indicated that she never had been hospitalized for psychological problems.  (*Id.*).

As to her activities of daily living, Plaintiff said that she typically awoke at 6:45 a.m., then would wake up her 14-year-old son to get ready for school.  (Tr. 601).  She would drive her son to school.  (Tr. 581).  For the rest of the day, she would sit or lie around, sometimes sleeping, sometimes watching television.  (Tr. 601-02).  Sometimes she cooked; she did dishes, but not very often; she did laundry; sometimes cleaned; went to the grocery store, although she did not like to; and sometimes helped her son with his homework.  (Tr. 599, 603, 612).  She used to like to read.  (Tr. 605).  Plaintiff tried to get out to walk.  (Tr. 600).  Her mother and friends visited her two or three times per month and she talked with

her mother daily. (Tr. 599, 616-17). Plaintiff testified that she did not like to be around large groups of people, or to be out in general. (Tr. 608-09).

At the August 2008 administrative hearing, Plaintiff testified that she had crying spells approximately every other day. (Tr. 629). After taking her son to school, she would come home, lie down for a couple hours, wander around a bit and take the dog out, then "tidy up" the house a bit. (Tr. 637). She thought that she probably had about two "good" days and five bad days in a week. (Tr. 639-40). On a bad day, she suffered more both physically and mentally, and could not do anything beyond driving her son to school. (Tr. 640). Plaintiff testified that she had three panic attacks in a four-week period. (Tr. 646).

Turning to the remaining information in the administrative record, the most significant evidence for purposes of the present case consists of Plaintiff's medical records and the opinions of several medical sources. In her Statement of Errors, Plaintiff does not challenge the ALJ's findings with respect to her alleged exertional impairments. (Doc. #6). Accordingly, the Court will focus its review of the medical evidence on that related to Plaintiff's alleged mental impairments.

George O. Schulz, Ph.D. Plaintiff underwent a psychological consultative examination by Dr. Schulz, a clinical psychologist, in December 2004. (Tr. 203-10). Plaintiff reported that in 2001 she had been diagnosed with bipolar disorder and anxiety/panic disorder, but was not being treated for those conditions due to the effects on

her diabetes.  (*Id.*).  She never had been hospitalized for a "nerve" problem, psychiatric disorder or depression.  (*Id.*).  On mental status examination, Dr. Schulz noted that Plaintiff's affect was appropriate and congruent, and her mood was euthymic.  (*Id.*).  Dr. Schulz further noted that Plaintiff's judgment appeared sufficient to make life decisions, conduct her own living arrangements and participate in a treatment program.  (*Id.*). WAIS-III testing resulted in a Verbal I.Q. score of 84; Performance I.Q. score of 91; and a Full-Scale I.Q. score of 84.  (*Id.*).  Achievement testing showed that the Plaintiff had reading skills beyond a high school level.  (*Id.*).  Dr. Schulz diagnosed dysthymia, an anxiety disorder, and borderline intellectual functioning.  (*Id.*).  Plaintiff was assigned a Global Assessment of Functioning ["GAF"] of 58, with good functioning in all areas. (*Id.*).

Dr. Schulz opined that Plaintiff was minimally impaired in her ability to relate to others; was moderately impaired in her ability to understand, remember and follow instructions, due to borderline intellectual functioning; but was capable of comprehending and completing simple and moderate routine tasks.  (*Id.*).  Dr. Schulz also reported that Plaintiff was minimally impaired in her ability to maintain attention and concentration and to perform simple, repetitive tasks with adequate pace and perseverance; and was moderately impaired in her ability to withstand the stress and pressures associated with daily work activity.  (*Id.*).

<u>Audrey Todd, Ph.D.</u>  Dr. Todd, a state agency reviewing psychologist, found in February 2005 that Plaintiff had mild restriction of activities of daily living; moderate

difficulties in maintaining social functioning and maintaining concentration, persistence or pace; and no episodes of decompensation. (Tr. 217-34). Dr. Todd also questioned Plaintiff's bipolar disorder diagnosis, finding "no evidence of history of manic episodes." (Tr. 219). Dr. Todd's opinion was affirmed by Dr. Tonnie A. Hoyle, another state agency reviewing psychologist, in August of 2005. (Tr. 219, 221).

Mental Health Services for Clark & Madison Counties/Mark A. Smith, M.D.

Plaintiff attended counseling at Mental Health Services for Clark and Madison Counties from April 2005 through May 2008. (Tr. 454, 458, 460, 462-63, 465-66, 468, 470, 472-73, 475, 477-78, 572, 574-75). Initially, Plaintiff reported problems with mood swings, but denied having received any previous psychological or psychiatric treatment. (Tr. 479-81). The intake counselor diagnosed Plaintiff with bipolar disorder and attention deficit hyperactivity disorder ["ADHD"], and she was assigned a GAF of 40. (*Id.*). Treatment notes at that time reflected that Plaintiff's symptoms were largely situational and related to breaking up with her boyfriend and difficulty dealing with her teenage son. (Tr. 454, 462, 472-73). The record also shows that Plaintiff missed a multitude of appointments. (Tr. 459-65, 571, 575).

In September 2005, Plaintiff presented with a "fairly pleasant/congruent" mood and affect, and denied any major mood swings since her last counseling session. (Tr. 475). It was noted that she had not been taking her medication. (*Id.*). In July 2006, Plaintiff reported that she had been getting out of the house more, and had been taking walks. (Tr. 468). In October 2006, Plaintiff reported that getting a dog had helped her,

and that she had not had any major mood swings. (Tr. 465). In April 2007, Plaintiff explained that she tended to become "too involved" in her friends' problems, and that she did not make enough time for herself. (Tr. 463). In July 2007, Plaintiff reported arguments with her boyfriend, and described not feeling safe at home. (Tr. 462). In May and August 2008, Plaintiff's therapist noted that Plaintiff had "no major concerns" at that time. (Tr. 571-72).

Plaintiff saw psychiatrist Dr. Mark A. Smith every three to four months from June 2005 through May 2008. (Tr. 428, 430, 456, 467, 469, 471, 474, 476, 573). Dr. Smith prescribed medication and oversaw Plaintiff's counseling. (*Id.*). In treatment notes from 2007 and early 2008, Dr. Smith noted appropriate appearance, no psychomotor abnormalities, normal speech, coherent thought processes, no hallucinations, no delusions, appropriate affect, good insight, good judgment, and no suicidal or homicidal ideation, but a depressed and anxious mood. (Tr. 428, 430, 456).

In June 2007, Dr. Smith noted Plaintiff's diagnoses as bipolar disorder, attention deficit hyperactivity disorder and panic disorder. (Tr. 418-21). Dr. Smith reported that Plaintiff had "struggled with mood swings and anxiety attacks for many years." (*Id.*). Dr. Smith also reported that Plaintiff has "mood swings with depression with reduced energy." (*Id.*). He continued that Plaintiff has an "inability to cope with stress punctuated with spells of racing thoughts – agitation and increased anxiety attacks." (*Id.*). Dr. Smith also reported that with ADHD, Plaintiff could not stay focused. (*Id.*). Dr. Smith further noted that Plaintiff had a "history of poor response" to medication. (*Id.*).

Also in June 2007, Dr. Smith completed a mental functional capacity assessment (Tr. 422-27), indicating that Plaintiff's ability to handle daily activities was fair, but that her ability to maintain social functioning and her capacity for concentration, persistence or pace were poor or none. (*Id.* at 423). Dr. Smith also reported that Plaintiff had experienced four or more episodes of decompensation within a one-year period. (*Id.*). He further reported that the "stress of work" and "being around people" would cause her symptoms to "escalate quickly." (*Id.*). Dr. Smith opined that Plaintiff's impairments were "chronic" and would "last a lifetime." (Tr. at 424). Although he noted that he continued to see Plaintiff and to try different medications, and projected "mild improvement with treatment," Dr. Smith nonetheless indicated that he believed Plaintiff would "be disabled forever." (*Id.*).

Dr. Smith submitted an additional mental functional capacity assessment in January 2008 (Tr. 451-53), in which he stated that the Plaintiff was extremely or markedly limited in most areas of work-related mental functioning (Tr. 452), and that she was "unemployable" as a result. (Tr. 453).

Michael J. Wuebker, Ph.D.  Plaintiff underwent a psychological consultative examination by Dr. Wuebker in May 2008. (Tr. 557-64). Plaintiff remarked that she has been "depressed most of her life." (*Id.*). Plaintiff further described, however, being able to engage in a wide variety of daily activities. (*Id.*). Dr. Wuebker diagnosed bipolar disorder, panic disorder without agoraphobia, and borderline intellectual functioning. (*Id.*). He assigned Plaintiff a GAF of 60. (*Id.*). Dr. Wuebker opined that

Plaintiff's ability to relate to co-workers and supervisors was unimpaired; her ability to understand, remember, and follow simple instructions was mildly impaired; her ability to maintain attention, concentration, persistence and pace to perform simple, repetitive workplace tasks was mildly impaired; and her ability to withstand the stress and pressures associated with work activity on a daily basis was moderately impaired. (*Id.*).

## III. THE "DISABILITY" REQUIREMENT & ADMINISTRATIVE REVIEW

### A. <u>Applicable Standards</u>

The Social Security Administration provides SSI to indigent individuals, subject to several eligibility requirements. Chief among these, for purposes of this case, is the "disability" requirement. To receive SSI, an applicant must be a "disabled individual." 42 U.S.C. §1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70. An SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. (*See* Tr. 12-14); *see also* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any Step terminates the ALJ's review,

*see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the

sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001).

**B.      The ALJ's Decision**

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff has not engaged

in substantial gainful activity since the date she filed her application of October 7, 2004.

(Tr. 15).

The ALJ found at Step 2 that Plaintiff has the severe impairments of diabetes mellitus, chronic low back, neck, and right shoulder pain, chronic obstructive pulmonary disease, and a bipolar disorder with features of depression and anxiety. (*Id.*). The ALJ determined at Step 3 that Plaintiff does not have an impairment or combination of impairments that meet or equal the level of severity described in Appendix 1, Subpart P, Regulations No. 4. (*Id.*).

At Step 4 the ALJ found, *inter alia*, that Plaintiff retained the mental capacity to perform low stress jobs with no production quotas; no complex or detailed instructions; and no requirement to maintain concentration on a single task for longer than 15 minutes at a time. (Tr. 16). The ALJ further found that Plaintiff is unable to perform her past relevant work as a nurse's aide. (Tr. 23). This assessment, along with the ALJ's findings throughout his sequential evaluation, led him ultimately to conclude that Plaintiff was not under a disability and hence not eligible for SSI. (Tr. 24).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: whether substantial evidence in the administrative record supports the ALJ's factual findings and whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F.3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of

"'more than a scintilla of evidence but less than a preponderance . . ."' *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6ᵗʰ Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6ᵗʰ Cir. 1994). Also, the required analysis is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6ᵗʰ Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F.3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6ᵗʰ Cir.2004)).

## V.     DISCUSSION

### A.     The Parties' Contentions

Plaintiff identifies only two respects in which she contends that the ALJ erred: first, by rejecting the opinions of Dr. Smith, her treating psychiatrist, and instead crediting the opinions of Dr. Schulz and Dr. Wuebker, the examining state agency psychologists

(Doc. # 6 at 1); and second, by taking Plaintiff's hearing testimony out of context. (*Id.*). Plaintiff offers no substantive argument in support of either of those bare-bones contentions. (*See id.*).

The Commissioner first urges that Plaintiff's objections to the ALJ's decision should be deemed waived due to her failure to offer anything to support her contentions. (*See* Doc. #10 at 8). Nonetheless continuing to the merits, Defendant contends that substantial evidence supports the ALJ's decision. Defendant argues that the ALJ weighed the opinions of Drs. Smith, Schulz and Wuebker in accordance with controlling law, and acted reasonably in "accord[ing] greater weight to the assessments of Drs. Schulz and Wuebker" and in imposing specific work-related limitations "based primarily upon their suggestions of mild to sometimes moderate level psychopathology." (*Id.* at 8-10). The Commissioner also asserts that Plaintiff's testimony was not taken out of context, but was reasonably used by the ALJ in assessing Plaintiff's credibility. (*Id.* at 10-11).

### B. Medical Source Opinions

#### 1. *Treating Medical Sources*

Key among the standards to which an ALJ must adhere is the principle that greater deference is generally given to the opinions of treating medical sources than to the opinions of a non-treating medical source. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see* 20 C.F.R. § 416.927(d)(2). This is so, the Regulations explain, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a SSI claimant's] medical impairment(s) and may bring a

unique perspective to the medical evidence that cannot be obtained from the objective

medical findings alone or from reports of individual examiners, such as consultative

examinations or brief hospitalizations . . ." 20 C.F.R. § 416.927(d)(2); *see also Rogers*,

486 F.3d at 242. In light of this, an ALJ must apply controlling weight to a treating

source's opinion when it is both well supported by medically acceptable data and not

inconsistent with other substantial evidence of record. *Rogers*, 486 F.3d at 242; *see*

*Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399 (6th Cir. 2009) (quoting *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *see also* C.F.R. § 416.927(d)(2).

If either of these attributes is missing, the treating source's opinion is not

deferentially due controlling weight, *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544,

but the ALJ's analysis does not end there. Instead, the Regulations create a further

mandatory task for the ALJ:

> Adjudicators must remember that a finding that a treating
> source medical opinion is not well-supported by medically
> acceptable [data] . . . or is inconsistent with other substantial
> evidence in the case record means only that the opinion is not
> entitled to 'controlling weight,' not that the opinion should be
> rejected . . .

Social Security Ruling 96-2p, 1996 WL 374188 at *4. The Regulations require the ALJ

to continue evaluating of the treating source's opinions by considering "a host of other

factors, including the length, frequency, nature, and extent of the treatment relationship;

the supportability and consistency of the physician's conclusions; the specialization of the

physician; and any other relevant factors." *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.2d at 544.

"[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician [or psychologist] is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242.

## 2. *Non-Treating Medical Sources*

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, 1996 WL 374180 at *2. Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source. *See id*. at *2-*3. The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 416.927(b). To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in § 416.927(d) including, at a minium, the factors of supportability, consistency, and specialization. *See* 20 C.F.R. § 416.972(f); *see also* Ruling 96-6p at *2-*3.

## C. Analysis

A review of the ALJ's decision reveals a well-supported description of the medical source opinions and records regarding Plaintiff's mental impairments. (Tr. 19-21). Additionally, in discussing Plaintiff's Residual Functional Capacity, the ALJ

15

affirmatively represented that he had "considered opinion evidence in accordance with the requirements of 20 CFR [§] 416.927 and SSRs [Social Security Rulings] 96-2p, 96-5p, 96-6p and 06-03p." (Tr. 21). Because the ALJ did not detail the legal criteria set forth in those Regulations and discussed in those Rulings, however, the Court must scrutinize the ALJ's decision to determine whether he in fact applied the correct legal criteria when evaluating the medical source opinions. *See Bowen*, 478 F.3d at 746.

Without any amplification, Plaintiff's Statement of Errors challenges the ALJ's assignment of "relatively little weight to the findings and opinions rendered" by treating psychiatrist Mark A. Smith, M.D. (Doc. #6 at 1). Assuming that Plaintiff's unelaborated assertion to that effect were sufficient to preserve a viable issue,[2] this Court's review of the record reveals that substantial evidence supports the ALJ's decision not to accord Dr. Smith's opinions controlling or even significant weight. The record clearly demonstrates (and Plaintiff implicitly concedes, *see id.*) that Dr. Smith's opinion is inconsistent with those of Drs. Schulz and Wuebker. For that reason alone, that opinion was not deferentially due controlling weight. *See Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544.

Additionally, as the Commissioner aptly notes (Doc. #10 at 8-9), the ALJ correctly recognized that Dr. Smith saw Plaintiff "on only a quarterly basis," during which "his role

---

[2]Defendant raises a valid question as to whether Plaintiff's allegations are sufficient for this Court even to consider that issue. (Doc. #10 at 8); *see McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."), *cert denied*, 523 U.S. 1050 (1998).

primarily focuse[d] on prescribing medication." (*See* Tr. 21). Despite the argument

articulated in Plaintiff's reply memorandum (*see* Doc. #12 at 4), the frequency, nature and

extent of Dr. Smith's treatment relationship with Plaintiff were appropriate factors for the

ALJ to consider, *see Rogers*, 486 F.3d at 242; *Wilson*, 378 F.2d at 544, and the relative

infrequency and limited scope of Dr. Smith's sessions with Plaintiff provided valid

reasons for the ALJ to decline to fully credit Dr. Smith's opinions. *See, e.g.,* 20 C.F.R. §

416.927(d)(2)(I) ("Generally, . . . the more times you have been seen by a treating source,

the more weight we will give to the source's medical opinion"); 20 C.F.R. §

416.927(d)(2)(ii) ("We will look at the treatment the source has provided and at the kinds

and extent of examinations and testing the source has performed or ordered").

Significantly, despite a specific written request for "representative examples"

regarding the limitations he ascribed to Plaintiff (*see* Tr. 423 at ¶B4), Dr. Smith provided

no such "examples" to support his assertions that Plaintiff's impairments were chronic

and would "last a lifetime," disabling Plaintiff "forever." (*See id.* at 423-24). The effect

of that omission on the "supportability" of Dr. Smith's disability opinions likewise was a

relevant factor for the ALJ to consider as weighing against significant reliance on the

treating physician's opinions. *See Rogers*, 486 F.3d at 242; *Wilson*, 378 F.2d at 544

Similarly, when Dr. Smith was asked (via interrogatories) to identify "particular

psychometric and/or clinical findings" that supported his disability assessment (*see* Tr.

425 at ¶(2)), he again failed to identify any substantiating documentation. (*See* Tr. 425-

27). Moreover, Plaintiff has failed to explain how any particular entries among Dr.

Smith's medical records support Dr. Smith's conclusions (*see* Doc. #6; Doc. #12 at 5), while contrary evidence is readily apparent from the record.  For example, the mental status findings recorded during office visits with Plaintiff – *e.g.*, that Plaintiff had normal speech, thought process/content and memory; appropriate affect; and good insight (*see* Tr. 428, 430, 456, 467, 469, 471, 474, 476, 573) – tend to controvert Dr. Smith's conclusory negative assessment.  As observed by the ALJ, Dr. Smith's assessment also is difficult to reconcile with Plaintiff's description of her daily activities. (Tr. 21; *see, e.g.*, Tr. 581, 599-605, 612, 616-17).  As a result, the record lends ample support for the ALJ's conclusion that Dr. Smith's opinion "is not well-supported by the evidence; and is wholly contrary to, and inconsistent with, the <u>weight</u> of the evidence."  (Tr. 21) (emphasis added).

In contrast,  Dr. Schulz and Dr. Wuebker based their opinions on a detailed assessment of Plaintiff's daily activities, along with results from mental status tests that Dr. Schulz administered (measuring cognitive functioning, memory recall, and mathematical aptitude).  (*See* Tr. 203-10).  As such, Drs. Schulz's and Wuebker's opinions were based on the types of "signs" described in Listing 12.00B (the listing for mental disorders).  The ALJ therefore reasonably gave more weight to Dr. Schulz's and Dr. Wuebker's opinions than to those of Dr. Smith, because Dr. Schulz and Dr. Wuebker did not rely solely on Plaintiff's subjective description of what she could or could not do.  *See Smith v. Comm'r. of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (finding no error where ALJ rejected physician's opinion based only on plaintiff's description of her

symptoms where ALJ found that description to lack credibility); *cf.* 20 C.F.R. §

416.929(a) ("statements about your . . . symptoms will not alone establish that you are

disabled"). For all the above reasons, Plaintiff's challenges to the ALJ's rejection of Dr.

Smith's opinions and to the ALJ's evaluation of her mental work abilities are not well

taken.

Plaintiff next contends that the ALJ erred by taking Plaintiff's hearing testimony

out of context. That contention, too, fails to illuminate any reversible error in this case.

The Regulations permit an ALJ to consider a plaintiff's daily activities when assessing

her credibility. *See* 20 C.F.R. § 416.929(c)(i). Substantial evidence, including Plaintiff's

own testimony, supported the ALJ's view of her daily activities. For example, Plaintiff

testified that she performs basic household chores such as cooking, washing dishes,

sweeping, mopping, doing laundry, and shopping at the grocery store and going to Wal-

Mart. She walks for exercise, takes her son to school, and helps him with homework in

the evening. (Tr. 581, 599 601-03, 605, 612, 616-17, 637).

The ALJ's decision also contains a discussion of additional factors he considered

to be relevant to Plaintiff's credibility. For example, the ALJ observed that Plaintiff does

not consistently attend counseling sessions as scheduled and does not take psychotropic

medication as prescribed. (*See* Tr. 19); *see also* 20 C.F.R. § 416.929(c). The ALJ further

attached significance to Plaintiff's testimony that she never had been hospitalized for

psychiatric reasons. (*See* Tr. 14, 590).

In her reply memorandum, Plaintiff attempts for the first time to provide specifics about the ALJ's purported mishandling or "misinterpret[ation]" of her hearing testimony. (*See* Doc. #12 at 1-4). Again, such specifics were conspicuously absent from her original Statement of Errors (*see* Doc. #6), where they should have been raised.[3] Aside from the impropriety of introducing such matters via a reply brief,[4] however, Plaintiff also does not convincingly demonstrate that the ALJ's construction of her testimony was erroneous. Although Plaintiff <u>did</u> express that her ability to engage in many of the activities she described was limited by her inability to concentrate, her reluctance to leave her home and/or the severity of her crying spells and anxiety attacks (*see* Doc. #6 at 2-3, citing Tr. 601, 603, 605-06, 608-09, 629, 646), that fact does not detract from the ALJ's finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not [wholly] credible." (Tr. 22). Absent an allegation that the ALJ somehow improperly evaluated her credibility, this Court is unable to discern any error in the ALJ's handling of that evidence. Accordingly, Plaintiff's second challenge to the ALJ's decision also lacks merit.

**IT THEREFORE IS RECOMMENDED THAT:**

1. The Commissioner's final non-disability decision be AFFIRMED; and

---

[3]*See* n.2, *supra.*

[4]Courts "will generally not hear issues raised for the first time in a reply brief." *United States v. Calloway*, 189 Fed. App'x 486, 492 (quoting *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir.2001)).

2.     The case be TERMINATED on the docket of this Court.

January 26, 2010                              __s/ Sharon L. Ovington_____
                                             Sharon L. Ovington
                                             United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten [10] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Am,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981).